224 F.2d 849
 OIL TRANSFER CORPORATION, as Owner of The OIL TRANSFER NO. 31, Libelant-Appellee,
v.
The CREE, Motor Tug Cree, Inc., Claimant-Appellant,
THE DAUNTLESS NO. 12 and THE PENN NO. 5, Dauntless Towing Line, Inc. and Penn No. 5, Inc., Claimants-Appellees, and
THE K. WHITTELSEY, Oil Transfer Corporation, Claimant-Impleaded-Appellee.
 No. 311.
 Docket 23513.
 United States Court of Appeals Second Circuit.
 Argued May 11, 1955.
 Decided June 22, 1955.
 
 The facts, as found by the trial judge, are as follows:
 "About 1:45 P.M. the laden OT-31, made up with the Tug K. Whittelsey, pusher-fashion, departed Waterford Terminal for the southbound trip to Carteret, N. J. In the Hudson River some two and one-half miles south of Waterford is the Troy lock, because of the existing freshet condition, the government engineers in charge of the lock required all vessels locking through to have the assistance of two tugs, in order to prevent damage to the lock. To comply with this requirement the tug Otco was engaged to join the tow in the vicinity of the lock. Weather conditions were poor, with sleet, snow and reduced visibility.
 "On the trip downstream an uneventful meeting was had with a northbound tow, consisting of the tugs Penn No. 5, Dauntless No. 12, and the Oil barge Morania 140, somewhere to the north of 112th Street bridge, and south of buoy No. 7. After passing the 112th Street bridge and in the vicinity of buoy No. 5, the K. Whittelsey and tow were passed by the tug Otco, which proceeded down to the lock. The K. Whittelsey blew the regulation lock signal signifying an intention to lock, when in the vicinity of buoy No. 5, about a mile from the lock. The tug Otco, having gone to within 300 feet of the lock, also blew the signal and rejoined the K. Whittelsey and OT-31 in the vicinity of Buoy No. 2. The Otco tied up with its starboard bow to the OT-31's starboard bow, the Otco heading upstream so as to hold the tow against the current.
 "The three-unit tow had drifted about halfway to buoy No. 1, and close in to the east bank, when, without any passing signals, the Penn No. 5 and the Dauntless No. 12 passed to starboard of the unit, on their return from the Waterford Terminal. These tugs tied up to the east lock wall close to the lock gate to await lockage.
 "By this time the snow had stopped, visibility had cleared and the lock which heretofore had been obscured had become visible to those aboard the K. Whittelsey, standing by in the area north of buoy No. 1, about 1500-1600 feet north of the lock gate.
 "The lock used two signal devices, a green-red light signal and a semaphore arm. At the time the lock first became visible to the K. Whittelsey and tow the semaphore was down and the red light showing, signifying that the lock was in use.
 "Within a short time the superstructure, and then the entire outlines, of two tugs and a barge, being raised in the lock and heading north, became visible to the waiting K. Whittelsey unit. At about the same time the tugs Penn No. 5 and Dauntless No. 12 which had been tied up to the east lock wall proceeded to a point near the north end of the west lock wall to allow room for the northbound unit to pass out of the lock.
 "The gates of the lock opened and the unit, consisting of the tug Cree towing and the tug Chemung pushing the barge Hygrade No. 12, came out. As the stern of the Chemung cleared the lock wall, the K. Whittelsey still in a position north of buoy No. 1, in preparation for beginning its run on the lock, and believing itself to have precedence, exchanged starboard meeting signals with the northbound unit, signaled the Otco to cast off, and, this accomplished, began its run on the lock.
 "About this time the navigator of the K. Whittelsey noticed the Penn No. 5 and Dauntless No. 12 enter the lock. Although he considered himself entitled to enter the lock first by virtue of his prior locking signal, his position in the standby area and the fact that he was encumbered with a tow, he did not consider the situation alarming since he would have room to get a line out and stop his tow part way in the lock; the tugs could then be rearranged and all the vessels locked down together.
 "As the K. Whittelsey and its tow proceeded to the meeting with the northbound unit, the tug Cree cast off from the Hygrade 12, held to the west side of the river to allow the barge and the Chemung to pass, and then rounded to starboard passing under the stern of the Chemung and directly into the path of the OT-31 and K. Whittelsey. Having completed its turn the Cree proceeded into the lock, the gates of which were thereupon closed. The OT-31 and K. Whittelsey which by that time had headway and a three to four mile current under foot took action to stop, so as to prevent collision with the lock gates. As a result, the OT-31 struck the east wall, caromed off and struck the west wall a glancing blow and was brought to a stop only 30 feet from the lock gates after getting a line to the west wall."
 The OT-31 sued the tugs Penn No. 5, Dauntless No. 12 and Cree, claiming their negligence as the proximate cause of its injuries from the collisions against the lock-walls. The Cree, in turn, impleaded as a claimant the Tug K. Whittelsey, owned by the libelant.
 The trial judge found that, although the Penn No. 5 and the Dauntless No. 12 may have been at fault in not sounding the statutory blast for starboard passage, and in not allowing the encumbered OT-31 to enter the lock first, there was no causal relation between those faults and the injuries to the OT-31. He also found that, although the Whittelsey might have more promptly taken action by sounding the danger signal and reversing engines, it is not clear that such action would have prevented the accident, and that the Whittelsey was not at fault for not having followed what might appear, in retrospect, as a sounder course. He found the tug Cree wholly at fault for the damages sustained by the OT-31. From that judgment, the Cree appeals.
 Foley & Martin, New York City (James A. Martin and Warren J. Martin, New York City, of counsel), proctors for claimant-appellant.
 Macklin, Speer, Hanan & McKernan, New York City (John C. Hart, New York City, of counsel), proctors for libelant-appellee, Oil Transfer Corporation, and claimant-impleaded appellee, Oil Transfer Corporation.
 Herbert P. Reid, New York City, proctor for claimant-appellee, Dauntless Towing Line, Inc.
 Platow & Lyon, New York City (John A. Lyon, New York City, of counsel), proctors for claimants-appellees, Penn No. 5, Inc.
 Before HAND, SWAN and FRANK, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 There was evidence from which the judge might reasonably have found the facts as he did, and we agree with his judgment as to each of the tugs. The appellant alleges that the judge overlooked or ignored the deposition of Chester V. Germond, lock-tender at the Troy Locks. Germond testified by deposition to a conversation with the captain of the Cree at the time the Cree was moving north through the locks. According to his testimony, the Cree requested, and was granted, permission to re-enter the lock after it had disengaged itself, and be locked through on the southbound return with the Penn No. 5 and the Dauntless No. 12. Germond told the Cree's captain that the north gate would be held open for him although the signal-light at that end of the lock would still be red. However, the Cree did not return to the lock on the red signal, as agreed upon with the lock-tender. Had she done so, she would have been blameless, except for a possible violation of the Whittelsey's precedence. See Reg. 4, Rules and Regulations to Govern the Use, Administration and Navigation of the United States Lock in the Hudson River at Troy, N. Y. The trial judge found — and the record supports the finding — that the light went green when the tug Chemung, still in tow with the Cree on the northbound trip, cleared the lock-walls, and remained green at least until after the Whittelsey and her two had begun their run to the lock. Thus the Cree re-entered not on red but on green, after the Whittelsey, seeing the green, was entitled to begin its run to the lock. The arrangement with the lock-tender does not protect the Cree, for it did not proceed in accordance with it.
 
 
 2
 Although the Whittelsey and her tow were also entitled to precedence over the two light tugs Penn No. 5 and Dauntless No. 12, it was not harmed by their proceeding ahead of the Whittelsey, for both they and the Whittelsey tow could have berthed in the lock, although it would have been close quarters. For this reason, the Whittelsey took no action to reverse itself when it saw the two light tugs proceeding ahead of it, and for this reason the trial judge properly found that there was no causal connection between anything done by the two light tugs and the damage done the OT-31. It was the negligent navigation of the Cree in not yielding to the encumbered tow which caused the damage.
 
 
 3
 Affirmed.